## Case No. 17,855.

### In re WILTBANK.

[22 Int. Rev. Rec. 282.]

District Court, E. D. Pennsylvania. Sept. 4, 1876.

CRIMINAL LAW — DISAGREEMENT AND DISCHARGE OF JURY—AUTHORITY OF COURT.

In the case of James H. Wiltbank, charged with mutiny, the jury came into court, and stated that they were still unable to agree upon a verdict. Judge CADWALADER said that in his opinion, if the jury gave due effect to the evidence, their verdict should be one of guilty. The foreman stated, and several jurors sustained him, that they were divided in opinion as to the facts in the cause, some of them believing the witnesses for the prosecution, and others accepting as true the testimony of the second mate for the defence. There was an absolute division upon the facts, the differing jurors having formed their judgment conscientiously, and therefore being unwilling to yield.

The judge said that even if the statement of the second mate was believed, the verdict should still be one of guilty. He then express-

ed his views of the duties and powers of a jury, the importance of this case affecting the safety of life and property at sea, and the necessity for a verdict. He therefore refused to discharge them, and sent them back to their room.

The case was given to the jury on Wednesday. After being locked up all night, they came into court at noon on Thursday, and announced that they were unable to agree upon a verdict. CADWALADER, District Judge, after listening to their agreement to disagree, sent them back to their room, where they remained until the scene in court this morning narrated above.

One of the jurors is quite ill. He was sick all night, and is reported to be no better to-day. This afternoon, between 1 and 2 o'clock, the jury came into court, and stated that after an honest and laborious effort, they found themselves still unable to agree upon a verdict. There were conscientious differences upon questions of fact, which the members could not relinquish unless compelled to. A verdict from their own voluntary conviction was impossible; therefore, as they understood the powers and duties of a jury, they could not agree except under a binding instruction from the court, to which they would be bound to yield.

CADWALADER, District Judge, said that, under the evidence, he thougnt it the duty of the jury to convict the defendant. They could not do otherwise, unless they found that at the time of the occurrence charged as mutiny, the captain of the brig was incapable of navigating the vessel, because he was so intoxicated as to be irrational, and of this he saw no evidence in the case. In criminal cases the jury had the power to decide questions of law and fact, but always in conformity with the law and legal evidence, and they had no right to give an arbitrary decision of any question. To find that on this occasion the captain was incapable from drunkenness from navigating the vessel would be extremely arbitrary. He was willing to assume as much responsibility in this case as the law would permit, and therefore would accept the verdict of guilty, accompanied by a declaration that but for the further instruction of the court the jury would not have agreed upon a verdict. Such a verdict was accordingly rendered, coupled with a recommendation to mercy.

The defendant was permitted to depart on his own bail, the judge saying that the importance of the case had led him to the course he had pursued, and he was not only willing, but anxious, to hear an argument for a new trial, and correct whatever error he may have committed.

The jury, which consisted of eleven members, stood on Wednesday and Thursday six for conviction to five for acquittal; yesterday seven for conviction to four for acquittal; this morning nine for conviction to two for acquittal; and from noon until they finally came into court ten for conviction to one for acquittal.